O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SAJEDA BARI,                        )   NO. CV 08-5753-MAN
                                    )
              Plaintiff,            )
                                    )   MEMORANDUM OPINION
         v.                         )
                                    )   AND ORDER
MICHAEL J. ASTRUE,                  )
Commissioner of the                 )
Social Security Administration,     )
                                    )
              Defendant.            )
_____)

     Plaintiff filed a Complaint on September 12, 2008, seeking review
of the denial by the Social Security Commissioner ("Commissioner") of
plaintiff's application for supplemental security income ("SSI"). On
November 12, 2008, the parties consented to proceed before the
undersigned United States Magistrate Judge pursuant to 28 U.S.C. §
636(c). The parties filed a Joint Stipulation on May 28, 2009, in
which: plaintiff seeks an order reversing the Commissioner's decision
and awarding benefits or, alternatively, remanding the case to the
Commissioner for a new administrative hearing; and defendant asks that
the Commissioner's decision be affirmed. The Court has taken the
parties' Joint Stipulation under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed her application for SSI on February 7, 2007, alleging an inability to work since March 1, 2003, due to a migrating intrauterine device ("IUD"). (Administrative Record ("A.R.") 57, 70.) Plaintiff has no past relevant work experience. (A.R. 247.) The Commissioner denied plaintiff's claim for benefits initially (A.R. 45-48) and upon reconsideration (A.R. 36-41). On April 23, 2008, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge Keith Dietterle ("ALJ"). (A.R. 242-60.) On May 21, 2008, the ALJ denied plaintiff's claims (A.R. 11-19), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 3-5).

**SUMMARY OF ADMINISTRATIVE DECISION**

The ALJ found that plaintiff has not engaged in substantial gainful activity since the application date of February 1, 2007. (A.R. 13.) The ALJ determined that plaintiff's history of migrating IUD constitutes a severe impairment. (*Id.*) However, the ALJ found that plaintiff does not have an impairment of combination of impairments that meets of medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

The ALJ further found that plaintiff has the residual functional capacity to perform sedentary work. (A.R. 13.) Plaintiff has no past relevant work. (A.R. 18.) The ALJ determined that, considering plaintiff's age, education, work experience, and residual functional

capacity, jobs exist in significant numbers in the national economy that plaintiff can perform. (*Id.*) Accordingly, the ALJ concluded that plaintiff has not been under a disability, as defined in the Social Security Act, since February 1, 2007, the date the application was filed. (A.R. 19.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Human Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d

3

1035, 1039 (9th Cir. 1995).  "Where the evidence as a whole can support either a grant or a denial, [a federal court] may not substitute [its] judgment for the ALJ's." <u>Bray v. Comm'r of Soc. Sec. Admin.</u>, 554 F.3d 1219, 1222 (9th Cir. 2009)(citation and internal punctuation omitted).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. <u>Tommasetti v. Astrue</u>, 553 F.3d 1035, 1038 (9th Cir. 2008); <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005); *see also* <u>Batson v. Comm'r of Soc. Sec. Admin.</u>, 359 F.3d 1190, 1193 (9th Cir. 2004)("if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision").  However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." <u>Orn</u>, 495 F.3d at 630; *see also* <u>Connett</u>, 340 F.3d at 874.  The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th Cir. 2006)(*quoting* <u>Stout v. Comm'r</u>, 454 F.3d 1050, 1055-56 (9th Cir. 2006)); *see also* <u>Tommasetti</u>, 533 F.3d at 1038; <u>Burch</u>, 400 F.3d at 679.

**DISCUSSION**

Plaintiff alleges four issues:  (1) whether the ALJ properly considered the treating physician's opinion; (2) whether the ALJ properly developed the record; (3) whether the ALJ properly considered plaintiff's testimony; and (4) whether the ALJ posed a complete

4

hypothetical question to the vocational expert.   (Joint Stipulation "Joint Stip." at 2.)   These issues are addressed below.

I. **The ALJ Properly Determined That Dr. Yen Lai Was Not Plaintiff's Treating Physician.**

Generally, a treating physician's opinion is given greater weight, because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)(citation omitted).   The weight given to a treating physician's opinion is directly proportional to the length of the relationship between the physician and claimant and the frequency of the examinations.   20 C.F.R. § 416.927(d)(2).   A treating physician's opinion may only be given controlling weight when it is well supported by medically acceptable clinical and laboratory diagnosis techniques and it is consistent with other substantial evidence in the record.   *Id.* When the opinion of a treating physician is contradicted, it may be rejected by the ALJ only for "specific, legitimate" reasons, based on substantial evidence in the record.   <u>Magallanes</u>, 881 F.2d at 751; <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002)("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."); *see also* <u>Batson</u>, 359 F.3d at 1195 & n.3 (9th Cir. 2004)(upholding the ALJ's rejection of an opinion that was "conclusory in the form of a check-list," and lacked supporting clinical findings); <u>Crane v. Shalala</u>, 76 F.3d 251, 253 (9th Cir. 1996)(the ALJ properly rejected doctors' psychological evaluations, because they were contained in check-off forms and lacked any explanation of their bases).

1    Plaintiff contends that the ALJ improperly concluded that Dr. Yen
2  Lai was not the treating physician.  The Court disagrees.

4    The record includes a one-page Authorization to Release Medical
5  Information form, dated December 20, 2007, which was completed by Dr.
6  Lai, plaintiff's purported treating physician.  (A.R. 241.)  On this
7  check-box form, Dr. Lai indicated no diagnosis, but checked the box
8  indicating that the patient was not able to work.[1]  (Id.)

10    The ALJ properly rejected Dr. Lai's check-box form, because it was
11 not supported by any treatment notes or objective evidence and the
12 treatment notes in the record do not support the finding that plaintiff
13 has the "marked" limitations Dr. Lai indicated.  The ALJ further noted
14 that "there is no evidence in the record of Dr. Lai ever treating the
15 claimant.  In fact, the claimant's last documented medical treatment was
16 with Dr. Leslie Po in April 2007, and at that time, Dr. Po noted that
17 the claimant's anemia had resolved."  (A.R. 16.)  In her portion of the
18 Joint Stipulation, plaintiff failed to cite any treatment records
19 corroborating Dr. Lai's check-box form opinions.  Instead, plaintiff
20 attempts to convince the Court that there "clearly" is a treating
21 relationship between her and Dr. Lai, because she scheduled a future
22 appointment with him on January 10, 2008.  (Joint Stip. at 4.)

24 [1]    In this stand alone check-box form, Dr. Lai indicated that: (1)
25 plaintiff had a medically verifiable condition that would limit or
   prevent her from performing tasks; (2) the onset date of the condition
   was 2003, the condition was chronic, and it would last until June 30,
26 2008; (3) plaintiff was actively seeking treatment, and her next
   appointment date was January 10, 2008; (4) plaintiff was not able to
27 work; (5) plaintiff could not provide care for her children; and (6)
   plaintiff's condition requires someone to be in the home to care for
28 her.

6

1    The Court is not convinced that Dr. Lai is properly viewed as a
2    treating physician within the meaning of the Social Security
3    regulations.  *See* 20 C.F.R. § 416.902 (defining "treating source" as
4    someone who provides medical treatment or evaluation and who has or has
5    had "an ongoing treatment relationship with" the claimant, which means
6    seeing the physician "with a frequency consistent with acceptable
7    medical practice for the type of treatment and/or evaluation required
8    for" the claimant's condition).  Other than on a check-box form, Dr.
9    Lai's name appears nowhere in the record.  In fact, the record
10   demonstrates that plaintiff saw Dr. Lai only the once, *i.e.,* on December
11   20, 2007, the date the physician filled out the form.

12

13   The one-page Authorization to Release Medical Information form does
14   not establish that plaintiff was treated by Dr. Lai, and it certainly
15   does not establish an ongoing treatment relationship.  A primary reason
16   the Court gives deference to treating physicians is because they have an
17   opportunity to know and observe their patients.  The fact that an
18   appointment was scheduled in the future does not have bearing on
19   plaintiff's argument, because it does not show that Dr. Lai had an
20   opportunity to know and observe the patient at the time the
21   Authorization to Release Medical Information form was filled out.

22

23   Accordingly, the Court finds no error in the ALJ's decision to
24   reject the Authorization to Release Medical Information form prepared by
25   Dr. Lai.
26   ///
27   ///
28   ///

7

**II.  The ALJ Properly Developed The Record.**

The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered, even when the claimant is represented, as in this case.  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001)(*citing* Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)); Crane, 76 F.3d at 255 (*citing* Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)).  However, "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."  Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001)(*citing* Tonapetyan, 242 F.3d at 1150).

Plaintiff contends that the ALJ failed to properly develop the record regarding a scheduled future appointment between plaintiff and Dr. Lai.  (Joint Stip. at 7.)  Contrary to plaintiff's contention, the ALJ properly satisfied his duty to fully and fairly develop the record.

In an effort to further develop the record, the ALJ asked plaintiff's counsel, at the April 23, 2008 hearing, if the medical record was complete.  (A.R. 244.)  Plaintiff's counsel responded, "I think so."  (A.R. 245.)  In addition, the ALJ asked plaintiff at the same hearing if she was being treated by, or seeing, a doctor. Plaintiff indicated that she was not being treated by, or seeing, a doctor.  (A.R. 250.)  Plaintiff now claims "it is clear that [she] has a treating relationship with Dr. Lai" (Joint Stip. at 9), and the ALJ improperly failed to request records of a future scheduled appointment

8

between them.  Plaintiff had ample opportunity to present the evidence of this "appointment" to the ALJ, the Appeals Council, and to this Court, but she has not done so.  In fact, nothing in the record indicates that the appointment with Dr. Lai that was scheduled for after the Administrative Hearing even took place.

Given the circumstances, the ALJ satisfied his duty and was not obligated to develop the record regarding this issue.  Plaintiff's medical record, Dr. Concepcion A. Enriquez's examination, and Dr. Rocelly Ella-Tamayo's examination sufficed to present a full and clear picture of plaintiff's impairment.  Additionally, Dr. Enriquez's and Dr. Ella-Tamayo's examination reports were substantiated with objective medical evidence on which the ALJ could reasonably base his decision. (A.R. 136-39, 156-62.)  The ALJ properly evaluated the claimant's symptoms and limitations, because the objective evidence in the record was neither ambiguous nor inadequate.  Therefore, the ALJ was not required to further develop the record.  *See* <u>Mayes</u>, 276 F.3d at 459-60.

Accordingly, plaintiff's argument that the ALJ failed to fully and fairly develop the record is rejected.

**III.  <u>The ALJ's Finding Regarding The Credibility Of Plaintiff's Claimed Symptoms And Limitations Is Affirmed</u>.**

The Court gives great weight to the ALJ's credibility assessment. <u>Anderson v. Sullivan</u>, 914 F.2d 1121, 1124 (9th Cir. 1990); <u>Brawner v. Secretary</u>, 839 F.2d 432, 433 (9th Cir. 1988)(recognizing that the ALJ's credibility determination is to be given great weight when supported

specifically).   In rendering a credibility evaluation, the ALJ may consider: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow prescribed course of treatment; and (3) the claimant's daily activities." Smolen, 80 F.3d at 1284. When an ALJ's decision rests on a negative credibility evaluation, "the ALJ must make findings on the record and must support those findings by pointing to substantial evidence on the record." Cequerra v. Sec'y of Health & Human Srvs., 933 F.2d 735, 738 (9th Cir. 1991); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995)(the ALJ's findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony"). Further, when the "ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, [the Court's] role is not to second-guess that decision." Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

Plaintiff contends that the ALJ failed to provide adequate reasons for rejecting plaintiff's credibility.   (Joint Stip. at 10.) Specifically, plaintiff claims that "[t]he ALJ's findings to support his conclusion that plaintiff was not credible are not supported by substantial evidence, and accordingly, the conclusion that plaintiff has the residual functional capacity to perform her past relevant work also

is not supported by substantial evidence."[2]  (*Id.*)  For the reasons that follow, the Court concludes that, in rendering his adverse credibility finding, the ALJ properly considered plaintiff's testimony and gave the requisite clear and convincing reasons to support his decision not to credit plaintiff's testimony regarding her symptoms and limitations fully.

First, the ALJ indicated that plaintiff's testimony was inconsistent with the presence of an incapacitating or debilitating medical condition.  As noted above, one form of evidence on which an ALJ may rely to assess claimant credibility is, "an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment."  <u>Fair</u>, 885 F.2d at 603; *see also* <u>Montalvo v. Astrue</u>, 237 Fed. Appx. 259, 262 (9th Cir. 2007)(finding that plaintiff's failure to comply with certain aspects of her treatment plan was a clear and convincing reason to reject her testimony); <u>Flaten v. Sec'y of Health & Human Servs.</u>, 44 F.3d 1453, 1464 (9th Cir. 1995)(finding it appropriate for the ALJ to discount plaintiff's credibility because of a lack of medical care during a period of claimed disability); <u>Contreras v. Astrue</u>, 2010 U.S. Dist. LEXIS 52787, *32 (C.D. Cal. 2010)(finding that "[p]laintiff's failure to comply with her medical treatment plan [wa]s a clear and convincing reason to discredit her testimony").  While

---

[2]   Plaintiff misstated the ALJ's finding.  The ALJ concluded that plaintiff has no past relevant work experience and is capable of performing "other work" that exists in significant numbers in the national economy.  (A.R. 18-19.)

1    there are acceptable reasons for failure to follow prescribed treatment,[3]

2    "a claimant's failure to assert one, or a finding by the ALJ that the

3    proffered reason is not believable, can cast doubt on the sincerity of

4    the claimant's pain testimony." Fair, 885 F.2d at 603.

6        As the ALJ noted, plaintiff did not follow her doctor's prescribed

7    course of treatment to mitigate her menstrual bleeding problem.  The ALJ

8    correctly found that "[t]he claimant was advised to take oral

9    contraceptive pills to help control her bleeding, but she declined to

10   follow this advice because she was afraid of gaining weight." (A.R.

11   17.)  Plaintiff's fear of gaining weight hardly constitutes a "good

12   reason" for failing to comply with her doctor's prescribed treatment.

13   See examples of "good reasons" at n.3 supra; see also 20 C.F.R. §

14   416.930(b) (stating that claimant's failure to follow prescribed

15   treatment without good reason will result in a finding of not disabled).

16   Additionally, as the ALJ noted, it appears that plaintiff's menstrual

---

18   [3]    As set forth in 20 C.F.R. § 416.930(c), the following are examples
19   of good reasons for not following prescribed treatment:

20       (1) The specific medical treatment is contrary to the
         established  teaching and tenets of your religion.

21       (2) The prescribed treatment would be cataract surgery for one
22       eye, when there is an impairment of the other eye resulting in
         a severe loss of vision and is not subject to improvement
         through treatment.

24       (3) Surgery was previously performed with unsuccessful results
         and the same surgery is again being recommended for the same
25       impairment.

26       (4) The treatment because of its magnitude (e.g. open heart
         surgery), unusual nature (e.g., organ transplant), or other
27       reason is very risky for you; or

28       (5) The treatment involves amputation of an extremity, or a
         major part of an extremity.

bleeding problem "is apparently not so severe as to [cause her to] comply with her physician's recommended course of treatment." (A.R. 17.)   Furthermore, as the ALJ correctly observed, "the claimant's medical treatment has been routine and conservative, and she has gone for long periods of time without any treatment whatsoever." (*Id.*)  The record contains no evidence of medical treatment after April 2007.[4]  On April 23, 2008, plaintiff admitted that she was not being treated by a doctor. (A.R. 250.)  The ALJ determined that plaintiff's inconsistent medical treatment was not congruent with a disabling condition.[5]

Second, plaintiff stated that she achieved relief by using Tylenol. (A.R. 249.)  It is well established that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding [the] severity of an impairment." Tommasetti, 533 F.3d at 1039 (*quoting* Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007)).  While plaintiff contended that she is unable to take prescription pain medication because it made her dizzy (A.R. 157, 251), the ALJ could reasonably deduce that she achieved adequate relief with Tylenol, because the record does not indicate that she pursued alternative kinds of pain management therapies (A.R. 17.).  *See* Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999)(rejecting subjective pain testimony where petitioner's "claim that she experienced pain approaching the highest

[4]    Dr. Lai did submit an Authorization to Release Medical Information form on December 20, 2007, but there is no evidence in the record of Dr. Lai ever treating the claimant. (A.R. 16.)

[5]    The ALJ noted, "[i]n all, [plaintiff]'s medical condition is stable and relatively benign based on objective findings. [Plaintiff]'s physical examinations have been essentially normal and, neurologically, the claimant is intact." (A.R. 17.)

13

1  level imaginable was inconsistent with the 'minimal, conservative
2  treatment' that she received").

3

4      Third, the ALJ cited the conflict between plaintiff's subjective
5  complaints and the objective medical evidence in the record as a further
6  reason to undermine plaintiff's credibility.  While not adequate as a
7  sole basis for discounting a plaintiff's subjective testimony, the
8  inconsistency of a plaintiff's testimony and objective evidence is a
9  legitimate factor to consider, along with other factors, in assessing an
10 ALJ's adverse credibility finding.  *See* <u>Morgan v. Comm'r of Soc. Sec.</u>
11 <u>Admin.</u>, 169 F.3d 595, 600 (9th Cir. 1999)("Where, as here, the ALJ has
12 made specific findings justifying a decision to disbelieve an allegation
13 . . . and those findings are supported by substantial evidence in the
14 record, our role is not to second-guess that decision.")(*quoting* <u>Fair</u>,
15 885 F.2d at 603).  Although plaintiff's medically determinable
16 impairment of having a retained IUD could reasonably be expected to
17 produce pain and other symptoms, the record does not support plaintiff's
18 allegations that such pain and symptoms cause her to be totally
19 disabled.

20

21     With respect to plaintiff's allegations that she suffers from lower
22 back and abdominal pain to the extent that she cannot sit for more than
23 an hour or stand for longer than 10 to 15 minutes (Joint Stip. at 10.),
24 the weight of medical evidence proves otherwise.  On April 19, 2007, Dr.
25 Enriquez provided an internal medical evidence consultation report in
26 which he concluded that plaintiff "can stand and/or walk with normal
27 breaks for six hours in an eight-hour workday . . . [and] can sit with
28 normal breaks for six hours in an eight hour day."  (A.R. 139.)  Dr.

Ella-Tamayo's March 13, 2006 internal medicine evaluation revealed that plaintiff's ability to sit was unrestricted, and she could stand and walk two hours a day. (A.R. 160.) As the ALJ correctly noted, these doctors' opinions are "well reasoned . . . [and] give great probative weight." (A.R. 14, 16.) In addition to these medical opinions that plaintiff can sit for periods longer than an hour and stand for periods longer than 10 to 15 minutes at a time, and notwithstanding plaintiff's statements that she does not go outside and only walks from her bedroom to the kitchen (A.R. 252), plaintiff testified that she flew for 12 hours to Bangladesh with her husband and small child, although she testified that she was medicated and slept throughout the flight (A.R. 255-56).

Lastly, although there is a report from Dr. Po, dated April 18, 2007, indicating that plaintiff was not able to work, this conclusory report was not substantiated by any tests or objective findings. (A.R. 240.) Additionally, the report specified that the disability was temporary and was expected to end on October 18, 2007. (*Id.*) Moreover, as the ALJ noted, "[n]o specific functional limitations were indicated." (A.R. 16, 240.) The above-discussed Authorization to Release Medical Information form submitted by Dr. Lai, on December 20, 2007, also asserted that plaintiff was not able to work. Like Dr. Po's report, Dr Lai's check-box form was wholly conclusory and not accompanied by any objective medical evidence or specific functional limitations.[6] The ALJ

---

[6]   Although not mentioned by the ALJ, the Authorization to Release Medical Information is internally inconsistent, given that Dr. Lai states that plaintiff's condition is chronic, yet also states that her condition would only last until June 30, 2008.

1   further noted, "there is no evidence in the record of Dr. Lai ever
2   treating claimant." (A.R. 16.)

4       Accordingly, the ALJ properly concluded that plaintiff's
5   allegations of disabling symptoms were not credible.

7   **IV.   The ALJ Posed A Complete Hypothetical To The Vocational Expert.**

9       Hypothetical questions posed to the vocational expert must
10  accurately describe all of the limitations and restrictions of the
11  claimant that are supported by the record. <u>Tackett v. Apfel</u>, 180 F.3d
12  1094, 1101 (9th Cir. 1999). However, the ALJ is not required to include
13  limitations for which there is insufficient, if any, supporting
14  evidence. *See* <u>Osenbrock v. Apfel</u>, 240 F.3d 1147, 1164-65 (9th Cir.
15  2001).

17      Plaintiff argues that the hypothetical posed to the vocational
18  expert was devoid of her "mental impairment and limitations" and thus,
19  cannot be used to assess her work capabilities. (Joint Stip. at 16.)
20  Critically, however, plaintiff does not mention any specific mental
21  impairment in the Joint Stipulation. (*Id.*) At the 2007 hearing, the
22  vocational expert testified that plaintiff had no past relevant work
23  experience. (A.R. 257.) The ALJ posed the following hypothetical
24  question to the vocational expert:

26      We have a younger individual with the equivalent of a high
27      school education. This person is literate, speaks English.
28      In the first hypothetical, this person is capable of sitting

16

six hours out of an eight-hour day, standing and walking two hours out of an eight-hour day, can occasionally lift 20 pounds, frequently lift 10 pounds, can occasionally climb stairs, should never climb ladders or scaffolds, can occasionally balance, can occasionally stoop, occasionally kneel, occasionally crouch, occasionally crawl. Would there be any jobs in the labor market that this person could do?

(A.R. 258.) In response, the vocational expert opined that, with these limitations, jobs were available for plaintiff in the workforce. (*Id.*)

As discussed above, the ALJ's residual functional capacity assessment included limitations that sufficiently addressed plaintiff's allegations of pain and physical limitations. To the extent plaintiff is claiming limitations in excess of the ALJ's RFC finding, the ALJ properly declined to include them in his RFC assessment and in the above hypothetical posed to the vocational expert. *See* <u>Bayliss v Barnhart</u>, 427 F.3d 1211, 1217-18 (9th Cir. 2005)(holding that the residual functional capacity determination need only include limitations the ALJ found supported by the evidence).

Therefore, this Court finds that the ALJ posited a complete hypothetical, based on a proper residual functional capacity determination that was supported by substantial evidence in the record, even if that assessment is susceptible to more than one rational interpretation. <u>Batson</u>, 359 F.3d at 1197.

17

1

                            **CONCLUSION**

2

3       For the foregoing reasons, the Court finds that the Commissioner's

4  decision is supported by substantial evidence and is free from material

5  legal error.  Neither reversal of the Commissioner's decision nor remand

6  is warranted.   Accordingly, IT IS ORDERED that Judgement shall be

7  entered affirming the decision of the Commissioner of the Social

8  Security Administration and dismissing this case with prejudice.

9

10      IT IS FURTHER ORDERED that the Clerk of the Court shall serve

11 copies of this Memorandum Opinion and Order and the Judgment on counsel

12 for plaintiff and for defendant.

13

14      **LET JUDGMENT BE ENTERED ACCORDINGLY.**

15

16 DATED:  September 24, 2010

17                                          _____
                                           MARGARET A. NAGLE
18                                         UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28

                                    18